Kimball *v.* Mulhern et al.

Hiram Kimball, for the use of Phineas Kimball, Plaintiff in Error, *v.* Justice Mulhern et al., as Assignees of John D. Rennard et al., Defendants in Error.

ERROR TO HANCOCK.

Property, in the hands of an assignee, for the purpose of paying creditors, cannot be reached by attachment or garnishee process.

This cause was heard by the court, Woodson, Judge, presiding, without the intervention of a jury, at October term, 1851, of the Hancock Circuit Court.

The opinion gives a full statement of the case.

Browning and Bushnell, and R. S. Blackwell, for plaintiff in error.

Warren and Edmonds, and Williams and Lawrence, for defendants in error.

Treat, C. J.   This was a proceeding by attachment, commenced in March, 1848, by Hiram Kimball against Justice Mulhern and George J. Barnett. The writ of attachment was levied on certain real estate. The declaration alleged in substance, that Smith and Rennard were indebted to the plaintiff in the sum of $2,000, on the 12th of August, 1846; that on that day, he sued out an attachment against them, which was immediately levied on their property; that on the 20th of the same month, Smith and Rennard assigned all of their estate, including the property so attached, to the defendants; that an arrangement was thereupon made, by which the plaintiff released the property attached, and the defendants undertook to pay him $1,306.80, out of the first proceeds of the estate

assigned; and that the defendants had disposed of the estate, and received $5,000 on account thereof. The declaration also contained a count for money had and received. The defendants appeared, and pleaded non assumpsit.

The cause was submitted to the court, at the October term, 1851. The plaintiff read in evidence the proceedings in the attachment suit referred to in the declaration. He also introduced the officer who served the attachment issued in that case, who testified, that he levied the same on a stock of goods in Nauvoo, amounting in value to about $3,000; he did not invoice the goods, because he was informed that the matter would be compromised; he held the possession of the goods until the 20th of August, 1846, at the request of the parties, to enable them to settle; it was then agreed between Kimball and Mulhern, that Kimball should release the goods from the lien of the attachment, so that Mulhern and Barnett could receive them under an assignment from Smith and Rennard, and that Mulhern and Barnett would pay Kimball the amount of his debt, $1,300, and save him harmless upon two or three orders or notes, amounting to $800 or $900, drawn by Kimball, but which Smith and Rennard were bound to pay; Kimball then discharged the levy, and Smith and Rennard assigned all their property to Mulhern and Barnett; Barnett was not present.

The plaintiff then offered in evidence the deed of assignment from Smith and Rennard to Mulhern and Barnett, bearing date the 12th of August, 1846. It purported to be signed by all the parties, and was acknowledged by Smith and Rennard and Mulhern, on the 20th of August, 1846. Smith and Rennard thereby assigned and conveyed all of their property to Mulhern and Barnett, in trust for the payment of their creditors. The property and the debts were particularly described in the assignment. The list of property embraced all the property attached in this suit; and the list of debts included a demand in favor of Kimball for $1,306.80. The deed, after directing the payment of the necessary expenses of executing the trust, contained these provisions: " The proceeds arising from the trust estate shall then be devoted to the payment of the balance due John Benbow and wife, on an unfinished contract for the purchase of certain lands from the said John Benbow and wife, which lands, when so paid for, shall form a further security for the claim of Hiram Kimball, and the liabilities of the said Hiram Kimball, as drawer of two certain bills of exchange, drawn by the said Hiram Kimball upon the said Smith and Rennard, payable at the Bank of the State of Missouri, dated July 18,

1846, and due three and four months after date; also a certain order of said Hiram Kimball on said Smith and Rennard, in favor of William Allen, for $300, payable four months from date; and should it be desirable to sell said land, then the said Hiram Kimball's lien upon said land shall be placed upon the security for the purchase-money which the purchaser shall give; and the residue of the proceeds of such sale and collections shall be considered as the net avails or proceeds of the property and effects hereby assigned; and by and with the net avails and proceeds aforesaid, the said parties of the second part shall pay and discharge the said debts of the said party of the first part in the manner following, that is to say, the parties of the second part shall pay, and discharge in full, the several and respective debts, bonds, notes, and sums of money, and bills of exchange, due or to grow due from the said party of the first part, for which they are liable to the several persons named and designated, together with the interest due and to grow due on such debts, bills, and notes, and sums respectively; and if said net proceeds shall not be sufficient to pay the said debts and liabilities in full, then the same shall be paid *pro rata* with such net proceeds." It appeared from the assignment, that the amount due to Benbow and wife was $1,500.

The plaintiff then called M. M. Merrill, who testified, that he was the attorney of Kimball, in the attachment suit against Smith and Rennard, and was present when the assignment was made; Kimball refused to release the goods unless Mulhern and Barnett would pay his debt, and save him harmless from the bills of exchange and order, and Mulhern agreed that they would pay the debt, and see him indemnified; Barnett was not present, and did not execute the assignment; Mulhern took possession of the goods, and sold some of them to Hartwell; Bever kept the store open for several months, and did business in the names of Mulhern and Barnett; he sold some of the goods, and shipped a portion of them to St. Louis.

The plaintiff also introduced the papers in an attachment case, sued out in the names of Mulhern and Barnett against John Benbow. The attachment bond purported to be executed by Mulhern and Barnett, by Bever, as their attorney in fact. J. Sibley testified, that he acted as the attorney of Mulhern and Barnett in that case, but did not recollect how it was disposed of; he received all his directions from Mulhern and Bever, and knew nothing of Barnett.

The plaintiff also read in evidence a deed from Mulhern and Barnett to Bever, for a tract of land embraced in the assignment. It recited the payment of the purchase-money, and was

acknowledged by both grantees in St. Louis. A witness testified, that Hartwell paid Mulhern $500 for the goods purchased by him.

On the foregoing evidence, the court rendered judgment in favor of the plaintiff for $1,706; with an order for execution against the defendants generally, and a special execution against the property attached.

Even if Mulhern and Barnett were personally liable to the plaintiff, the court erred in awarding a special execution against the property attached. The land was not subject to the payment of a judgment against them. They had no beneficial interest therein. It was not held by them in their own right, but in the character of trustees for the creditors of Smith and Rennard. They were invested with the legal title, to enable them to execute the trust. It was their duty to sell the property, and apply the proceeds to the payment of the debts named in the deed of assignment. But if the suit had been brought against Smith and Rennard, the property could not have been attached. It was already appropriated for the benefit of their creditors. Property in the hands of an assignee for the purpose of paying creditors, cannot be reached by process of attachment. Lupton *v.* Cutter, 8 Pickering, 298; Gore *v.* Clisby, Ib. 555; Tucker *v.* Clisby, 12 Pickering, 22; Sandford *v.* Bliss, Ib. 116. A creditor is not permitted to attach the property, or summon the assignee as a garnishee, and thereby secure an advantage over the other creditors. The property must be administered according to the terms of the assignment. If the assignee neglects or refuses to carry out the purposes of the trust, relief must be sought in a court of equity. In any point of view, this property was not attachable.

The evidence did not establish the joint liability of the defendants. It did not show that Barnett was personally liable for the debt. It did not tend to prove that he had promised to pay it, or that he had ratified the promise made by Mulhern. It was not a fair inference from the case, that he was even aware that the promise had been made. The fact that he acted under the assignment, did not render him liable for the assumpsit of Mulhern. It only made him a party to the assignment, and bound him to perform what it required of the assignees. It is no part of the terms of the assignment, that the assignees shall be personally responsible for the debts. It does not even require, that the plaintiff's debt shall be first paid out of the proceeds of the property. It provides that the amount due to Benbow shall be first paid, and that the property acquired from him shall be applied to the payment of the plaintiff's debt, and some

other debts for which he is liable. If the Benbow property is not sufficient to discharge these demands, the plaintiff, as to the residue, is in no better condition than the other creditors. The case does not show that this property has been sold by the assignees, or that they have received any money which by the terms of the assignment belongs to the plaintiff. The property must be converted into money, before he can maintain an action against them for money had and received.

It was, however, insisted that the defendants admitted their joint liability, by not pleading in abatement of the action. But the case is not within the provisions of § 8, ch. 40, R. S. The defendants are not sued as partners; nor as joint obligors, or payers. The plea of non assumpsit put in issue all the allegations of the declaration. The case of Petric v. Newell, 13 Illinois, 647, settles this question.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*